# Exhibit A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a Settlement Agreement and General Release (the "Agreement") entered into by and between Labcorp Staffing Solutions, Inc., Laboratory Corporation of America Holdings, and Laboratory Corporation of America (collectively, the "Company") and Ann Armstrong ("Armstrong") (collectively, the Company and Armstrong are referred to as the "Parties"). This Agreement will be effective once fully executed by the Parties (the "Effective Date").

## BACKGROUND

On September 1, 2021, Armstrong filed a lawsuit in the Magistrate Court of Gwinnett County, State of Georgia, styled as *Ann Armstrong v. Laboratory Corporation of America Holdings and Laboratory Corporation of America*, Case No. 21-M-24276, which was removed to federal court on October 7, 2021 and became Case No. 1:21-cv-04137-TWT (N.D. Ga.) (the "Armstrong Litigation"). Armstrong alleges claims under the Fair Labor Standards Act (the "FLSA") and also Georgia statutory and common law.

The Company denies any and all liability to Armstrong, and contends that there are defenses applicable to Armstrong, which, if asserted, would bar all or part of her claims. The Parties desire to enter into this Agreement to provide, among other things, for a reasonable settlement and full discharge of any and all disputes brought or which could have been brought by the Parties.

## SUBSTANTIVE PROVISIONS

In exchange for the mutual promises contained in this Agreement, and for other good and valuable consideration that the Parties acknowledge receiving, the Parties agree as follows:

### Section 1 – Payment

(a) **Sufficiency of Consideration.** Armstrong acknowledges and agrees that the payment provided under the terms of this Agreement is sufficient consideration for the releases and other promises made by Armstrong in this Agreement.

(b) **Payments.** In exchange for the promises and releases contained in this Agreement, and provided Armstrong does not revoke the Agreement as permitted in Section 4(f), below, the Company will pay Armstrong the total, gross amount of Six Thousand One Hundred Fifteen Dollars ($6,115) (the "Settlement Sum") within thirty (30) days of the Company's receipt of a signed copy of this Agreement executed by Armstrong, the appropriate tax forms (W4 and W9 forms) for all payees identified in Section 1(c) below, and the Court's approval of the Agreement and entry of an Order dismissing the Armstrong Litigation with prejudice, as described in Section 2(d) below, *whichever date is later*. If the deadline for payment ends on a Saturday, Sunday, or holiday, the payments will be made no later than the next regular business day.

(c) **Distribution of Payments.** The Settlement Sum shall be payable by the Company as follows:

    i.    The Company will pay directly to Armstrong the total sum of One Thousand Eight Hundred Seven Dollars and Fifty Cents ($1,807.50). The Parties agree that this amount is paid to settle a disputed claim for back pay or unpaid wages incurred by Armstrong and, therefore, the Company will issue a form W-2 to Armstrong in connection with the payment of this portion of the Settlement Sum.

    ii.    The Company will pay directly to Armstrong the total sum of One Thousand Eight Hundred Seven Dollars and Fifty Cents ($1,807.50). The Parties agree that this amount is paid to settle a disputed claim for liquidated damages and compensatory damages and as consideration for the general release, and, therefore, the Company will not issue a Form W-2 to Armstrong in connection with the payment of this portion of the Settlement Sum. Further, the Company will not withhold from this portion of the Settlement Sum any deduction or withholding. The Company will issue a Form 1099 to Armstrong in connection with the payment of this amount in the manner and at the time required by law.

    iii.    The Company will pay to The Dalziel Law Firm the total sum of Two Thousand Five Hundred Dollars ($2,500). Such payment is made for attorneys' fees and litigation costs incurred by Armstrong. Armstrong and her attorney will be solely responsible for any taxes payable for the receipt of such amount and shall receive a Form 1099 in the manner and at the time required by law. The Company will not be liable for the payment or reimbursement of any other attorneys' fees incurred by Armstrong whatsoever, including, but not limited to, any fees or costs incurred by Armstrong as a result of her association with, or retention of The Dalziel Law Firm or any attorney associated with the firm.

(d) **Indemnity for Fees and Taxes.** Armstrong acknowledges that she is responsible for paying any taxes on amounts she receives because she signed this Agreement. She understands that she may be subject to higher income tax rates resulting from amounts she received because she signed this Agreement. Armstrong agrees that the Company may withhold all taxes it determines it is legally required to withhold. Armstrong agrees to indemnify the Company for all expenses, penalties, or interest charges it incurs as a result of not paying payroll taxes on, or withholding taxes from, amounts paid under this Agreement. Armstrong further agrees not to make any claim against the Company or other person based on how the Company reports amounts paid under this Agreement to tax authorities or if an adverse determination is made as to the tax treatment of any amounts payable under this Agreement. In addition, Armstrong understands and agrees that the Company has no duty to try to prevent such an adverse determination.

### Section 2 – Complete Release by Armstrong

(a) **Full and Final General Release.** In exchange for payment of the Settlement Sum and the Company's promises contained in this Agreement, Armstrong agrees to release, irrevocably and unconditionally, any and all Claims (as defined in Section 2(c), below)

Armstrong may now have against the Released Parties (as defined in Section 2(b), below) as set forth in this Section 2 (the "Release").

(b) **Released Parties.** The "Released Parties" are jointly and severally the Company, and each of its parent companies, affiliates, subsidiaries, predecessors, successors, and any other related company, venture, partnership and, with respect to each such entity, all of its past and present officers, directors, owners, employees, representatives, assigns, and as to all Released Parties, each of its attorneys, agents, insurers, and any other persons acting by, through, under, or in concert with any of the persons or entities listed in this subsection (in their individual and representative capacities).

(c) **Claims Released.** In exchange for the payment of the Settlement Sum and the Company's promises contained in this Agreement, Armstrong, without any reservations whatsoever, forever releases and waives any claim or liability against the Released Parties, as of the date this Agreement is signed and executed by Armstrong, and agrees and promises not to commence any claim, action, or lawsuit against the Released Parties that Armstrong may now have or claim to have or that may hereinafter accrue, whether known or unknown, anticipated or unanticipated, asserted or that could have been asserted, from the beginning of the world to and through the date this Agreement is executed, as a result of any events, circumstances, facts, occurrences, actions, omissions, transactions, discussions, communications, positions, or statements previously occurring, taken or undertaken at any time prior to the date this Agreement is executed, including, but not limited to, any claims arising out of or in any way related to Armstrong's employment with the Company or any claims under the Fair Labor Standards Act of 1938, as amended; Title VII of the Civil Rights Act of 1964, as amended, 42 United States Code Sections 2000-e *et. seq.*; the Civil Rights Acts of 1866 and 1991, as amended; the Families First Coronavirus Response Act (or similar legislation); the Family and Medical Leave Act of 1993; the Rehabilitation Act of 1973; the Age Discrimination in Employment Act of 1967, as amended; the Older Worker's Benefit Protection Act; the Employee Retirement and Income Security Act of 1974; the Genetic Information Nondiscrimination Act of 2008; the Americans with Disabilities Act of 1990, as amended; the National Labor Relations Act, as amended; the Equal Pay Act of 1963, as amended; the Uniformed Services Employment and Reemployment Rights Act of 1963, as amended; the Labor-Management Relations Act of 1947, as amended; Georgia contract and common law; the Georgia Fair Employment Practices Act, O.C.G.A. §§ 34-5-1 *et seq.*, the Georgia Disabilities Code; the Georgia Age Discrimination in Employment Act; and any state or local laws, administrative actions, constitutional claims, contract and/or tort law claims, and/or claims for attorneys' fees (together the "Claims"). Armstrong intends to and does fully and finally release the Released Parties from any and all Claims she may have under any law, regulation, or statute arising from events occurring prior to the date of execution of this Agreement.

(d) **Dismissal with Prejudice.** In further consideration of the benefits conferred to Armstrong under the Agreement and as described in Section 1 above, within five (5) business days of the date the Agreement becomes fully executed by the parties, Armstrong will jointly file with the Company a motion seeking approval of the settlement and dismissal with prejudice of the Armstrong Litigation. This settlement is contingent upon the Court's approval of the Agreement and the dismissal with prejudice of the Armstrong Litigation. If, for whatever

reason, the Court does not approve the Agreement, then all parties are discharged of any and all obligations they have under the terms of the Agreement

Moreover, within five (5) business days of the date the Agreement becomes fully executed by the parties, Armstrong will prepare and file all appropriate notices or stipulations dismissing or withdrawing with prejudice any and all complaints, petitions, or claims filed against any of the Released Parties.

(e) **No Reported Violations to Outside Entities; Promise Not to Litigate Released Claims.** Unless contrary to, or prohibited by, applicable, prevailing law, by executing this Agreement, Armstrong represents that she has not filed any lawsuits, arbitration petitions, administrative complaints, or made any other charges, either in Armstrong's own or any other name, on behalf of any other person or entity, or otherwise, against the Released Parties in any local, state or federal court or with any local, state, federal or administrative agency. Armstrong further represents that she will not bring any action in the future in which she seeks to recover any damages from the Released Parties based on facts arising prior to the Effective Date of this Agreement, other than an action to enforce her rights under this Agreement pursuant to Section 4(d), below. Notwithstanding this representation, nothing in this Agreement shall interfere with Armstrong's right to file a charge or cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission and/or other federal, state, or local regulatory or law enforcement agency. However, the consideration provided to Armstrong in this Agreement shall be the sole relief provided to Armstrong for the claims that are released by Armstrong herein and Armstrong will not be entitled to recover and agrees to waive any monetary benefits or recovery against the Company in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge.

(f) **No Known Violations.** Armstrong represents that (i) Armstrong does not currently possess information that the Released Parties have violated, or allegedly violated, any law, regulation, or statute, and (ii) Armstrong has not raised or reported any such violations, or perceived violations, to the Released Parties. By executing this Agreement, Armstrong represents that she has no information that would form a basis of a claim or report of fraudulent or illegal activity by any Released Party.

### Section 3 – Promises by Armstrong

(a) **Ownership of Claims.** Armstrong has not assigned, transferred, or given away any of the Claims she is releasing, nor has she purported to do so.

(b) **Non-admission of Liability.** Armstrong agrees not to assert that this Agreement is an admission of guilt or wrongdoing by any Released Party and Armstrong acknowledges that the Released Parties deny that they have engaged in wrongdoing of any kind or nature.

(c) **Employment with Company.** Armstrong agrees that her employment with the Company is terminated. Armstrong agrees to waive and release any right to reinstatement or re-employment with the Company, and agrees that the Company will not employ, reinstate, or re-employ her. Armstrong further agrees that she will not at any time in the future apply for or accept employment with the Company or any of its parent, subsidiary, or affiliated entities. If

Armstrong breaches this provision, Armstrong understands that her application will be rejected and that such denial would not constitute retaliation in violation of any law. However, in the event that Armstrong becomes employed by the Company or any of its parent, subsidiary, or affiliated entities as an employee, consultant, independent contractor, or otherwise, she understands that she will be subject to summary dismissal or discharge without any resulting tort, contract, or other liability to the Company or any of its parent, subsidiary, or affiliated entities.

(d) **Finality of Release.** Armstrong agrees that if a court of competent jurisdiction finds Armstrong has failed to honor the terms and conditions of this Agreement or commences any claim, action, or lawsuit against the Company or any Released Party arising out of or in any way related to Armstrong's employment with the Company, in addition to (and not in substitution for) any other remedies available to the Company, the Company shall be entitled to such damages the Company may be awarded, notwithstanding the additional remedies available to the Company pursuant to Section 4(d) below.

(e) Armstrong agrees to maintain as confidential and not to disclose any confidential or proprietary information she learned, obtained, or acquired while employed by the Company. Armstrong agrees to return to the Company all originals and copies of Company documents, and all other property belonging to the Company, including but not limited to, proprietary or confidential information of the Company in her possession or control, or in the possession or control of her counsel, including any property or information that she provided to others.

(f) Armstrong agrees that she will not voluntarily testify, act as a witness, or provide any information orally or in writing, to any other person or entity concerning her past employment with the Company or the existence, terms, or underlying facts leading to this Agreement, except as otherwise provided for in this Agreement. Armstrong shall not state or suggest to any other person or entity that she should be subpoenaed to testify or provide information in any formal or informal proceedings against the Company. If Armstrong is served with a subpoena relating in any way to the Company or her past employment with the Company, Armstrong (or her counsel) shall immediately notify the Company's Corporate Counsel at chakera@labcorp.com within forty-eight (48) hours of receipt of the subpoena.

### Section 4 – Miscellaneous

(a) **Entire Agreement and Severability.** This is the entire agreement between Armstrong and the Released Parties on the subject matter of this Agreement. This Agreement may not be modified or canceled in any manner except by a writing signed by both Armstrong and an authorized Company official. The Parties acknowledge that no Party has made any representations or promises other than those in this Agreement. If any provision in this Settlement Agreement is found to be unenforceable, all other provisions will remain fully enforceable. The covenants set forth in this Settlement Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of this Agreement be held invalid, void, or unenforceable in any court or agency of competent jurisdiction, or by an arbitrator or panel of arbitrators, such invalidity, voidness, or unenforceability shall not render invalid, void, or unenforceable any other part or provision of this Agreement.

(b) **Interpretation and Forum.** This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against Armstrong or any Released Party. Unless the context indicates otherwise, the singular or plural number shall be deemed to include the other. Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement. This Agreement shall be governed by the statutes and common law of the state of Georgia, without regard to conflict of law principles.

(c) **Reference regarding Armstrong.** The Company represents that its standard practice for former employees is to provide neutral references through a third party administrator that can confirm the employee's dates of employment, position, and salary. Pursuant to the Company's practice, inquiries regarding Armstrong' employment will be directed to the Work Number at (800) 367-5690 or www.theworknumber.com (LabCorp code: 10636). Armstrong acknowledges that the Company is not responsible for any other information that a prospective employer may obtain regarding Armstrong or her employment with the Company that has been filed as part of a public record, including administrative agency filings.

(d) **Enforcement.** The Parties retain any rights they may have arising from a breach of this Agreement. Any use of this Agreement in any action arising from a breach of the Agreement shall be "under seal" only. The failure of Armstrong or any Released Party to insist upon the performance of any of the terms and conditions in this Agreement, or the failure to prosecute any breach of any of the terms and conditions of this Agreement, shall not be construed as a waiver of any term or condition of this Agreement. This entire Agreement shall remain in full force and effect as if no such forbearance or failure of performance had occurred.

(e) **Armstrong's Acknowledgment.** Armstrong acknowledges that no representation, promise or inducement has been made other than as set forth in this Agreement, and that Armstrong enters into this Agreement without reliance upon any other representation, promise, or inducement not set forth herein. Armstrong further acknowledges and represents that she assumes the risk for any mistake of fact now known or unknown, and that she understands and acknowledges the significance and consequences of this Agreement and represents that its terms are fully understood and voluntarily accepted.

(f) **Right of Revocation.** The Parties acknowledge and agree that, pursuant to the requirements of Section 7(f)(1)(F) & (G) of the ADEA, Armstrong's release of any ADEA claims requires that she be provided with a period of twenty-one (21) days to review this Agreement before signing it, the opportunity to consult with an attorney prior to signing this Agreement, and a period of seven (7) days after the date she signs this Agreement within which she may revoke the ADEA release. Armstrong acknowledges that if she executes the Agreement prior to the expiration of the twenty-one (21) day review period, she waives the remainder of the twenty-one (21) day review period. Armstrong further acknowledges that if she revokes the release of any ADEA claims, she will not receive the full amounts or benefits that are conditioned on her execution of this Agreement. Regardless of whether Armstrong revokes any ADEA claims, the remainder of this Agreement, including the waiver and release of all other claims, is effective on the date that the Agreement is signed by both Parties.

PD.36048209.1

(g) **Implementation.**  Armstrong and the Company agree to sign any documents and do anything else that is necessary in the future to implement this Agreement.

(h) **Informed, Voluntary Signature.**  Armstrong agrees that she has had a full and fair opportunity to review this Agreement and that she signed the Agreement knowingly, voluntarily, and without duress or coercion.

(i) **Execution of the Agreement.**  This Agreement may be executed in two counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same document.

[SIGNATURES ON FOLLOWING PAGE]

**ARMSTRONG HAS COMPLETELY READ THE TERMS OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTANDS THEM AND VOLUNTARILY ACCEPTS THEM FOR THE PURPOSE OF MAKING A FULL AND FINAL COMPROMISE AND SETTLEMENT OF ALL CLAIMS, DISPUTED OR OTHERWISE, ON ACCOUNT OF THE MATTERS AND THINGS ABOVE MENTIONED.**

- 8 -

Executed this 23rd day of November, 2021

_____
ANN ARMSTRONG

Executed this __1st__ day of Decemeber, 2021

_____
LABCORP STAFFING SOLUTIONS, INC.,
LABORATORY CORPORATION OF
AMERICA HOLDINGS, and LABORATORY
CORPORATION OF AMERICA

By: Drew Chakeres

Its: Global Employment Counsel